1829.

White
v.
Moore.

WHITE v. MOORE AND OTHERS.

A deed absolute on its face, if intended only as a mortgage or security for the payment of money, whether accompanied by a written defeasance or not must be recorded as a mortgage in order to protect the holder against a subsequent *bona fide* mortgagee or purchaser of the premises.

If no written defeasance was executed, the holder of the mortgage may comply with the requirement of the statute at any time afterwards by executing a defeasance according to the terms agreed upon by the parties, and then recording both instruments together as a mortgage.

August 4th.

[*552]

BLAUSIUS MOORE was the owner of certain premises, which were mortgaged to the complainant in November, 1825. *Moore was indebted to the Hudson Insurance Company in about the sum of $4,000; and in order to secure this amount, among other securities, he gave to Mark Spencer, the president of that company, an absolute deed of five-sixths of the mortgaged premises. This deed was dated in 1826, but left blank as to the day and month. It

was actually executed in April of that year, and was intended merely as a mortgage, although there was no written defeasance. On the 19th of July, 1826, the Hudson Insurance Company assigned the deed received from Moore, together with a large amount of other securities, to secure a debt of $700,000 due to the Fulton Bank. On the fifth of August, 1826, the deed to Spencer was recorded in the book of deeds in the city of New York, but has never been registered or recorded there as a mortgage. About the time Spencer conveyed the premises to the Fulton Bank; this and other securities were given to the bank in alsolute payment of a draft of $40,000 drawn by Spencer, and passed to the bank by the insurance company. The deed from Spencer was also recorded on the 5th of August, 1826. At the time of the execution of the deed to Spencer, the premises were subject to a mortgage to Kain. On the 9th of August, Mrs. Healy purchased the premises of Moore for $4,000, without any knowledge of the existence of the conveyance to Spencer. She paid $3,000, and reserved the residue until the Kain mortgage should be cancelled. On the 12th of September, Moore produced a certificate of the discharge of the Kain mortgage, and received from Mrs. Healy the balance of the purchase-money. The premises were sold under a decree in this cause, and produced a surplus of $1,257 74. A reference was made to a master to ascertain the facts, and report which of the defendants was entitled to the surplus. The master reported that it belonged to Mrs. Healey.

*H. W. Warner*, for S. A. Healy and wife :—The surplus funds in court belong to Healy and wife. The conveyance by Moore to Mark Spencer, which was assigned to the Fulton Bank, although absolute in its terms was intended only as a mortgage. It being a mortgage and not having been *recorded in the book of mortgages, the deed to Mrs. Healy takes priority over it. (1 R. L. 372, sec. 2, 3.) That the deed to Spencer was intended as a mortgage, may be shown by parol. (*Marks* v. *Pell*, 1 John. Ch. R. 594;

[*553]

*James* v. *Johnson,* 6 John. Ch. R. 417; *Slee* v. *Manhattan Company, ante,* p. 38.) The Fulton Bank received the deed from Spencer upon the same terms it was held by him, and acquired no greater rights than he possessed, and they had notice of all the circumstances under which it was given. (*Coddington* v. *Bay,* 20 John. R. 637.)

*J. Hoyt,* for the Fulton Bank, contended that the act concerning mortgages, contemplated only such defeasances to deeds as were reduced to writing; and that unless the defeasance was in writing, it was not necessary to cause the deed to be recorded in the book of mortgages. He also insisted that a person taking without notice, would be protected although he took from one who had notice. (*Jackson* v. *Given,* 8 John. R. 137; *Murray* v. *Ballou,* 1 John. Ch. R. 573; Jacob's Law Dic. tit. *Defeasance.*) And that Mrs. Healy had no other or greater equities than her grantor.

THE CHANCELLOR:—The right of the bank to the surplus produced on the sale of the mortgaged premises, depends upon the question whether the absolute deed given to Spencer, but which was in fact nothing but a mortgage, ought to have been registered or recorded as a mortgage. There is no pretence that Mrs. Healy knew any thing of it at the time of her purchase, although it was recorded as a deed some days previous.[1]

The second section of the act concerning mortgages (1 Rev. Laws, 373) provides, that no mortgage, nor any deed, conveyance or writing in the nature of a mortgage, shall defeat or prejudice the title or interest of any *bona fide* purchaser of any lands, tenements or hereditaments, unless the same shall have been duly registered, in the manner prescribed in that act. And the next section provides, that if there is a separate written defeasance, that shall also be recorded, in order to protect the instrument as a mortgage.

[1] 2 R. S. (4th ed.) 162, sec. 3.

The *object of this statute undoubtedly was to require every deed or instrument which was in fact only a mortgage, to be recorded. If the construction of this statute was now for the first time to be settled, there might be a possible doubt whether the second section was so worded as to reach instruments which did not on their face purport to be mortgages, or conveyances in the nature of mortgages. But after the decisions of this court, sanctioned as they have been by the court of *dernier* resort, the construction of the statute is no longer to be questioned. In *Day* v. *Dunham*, (2 John. Ch. R. 188,) Chancellor Kent held, that a deed absolute on its face, but intended only as a security by way of mortgage, must be recorded as a mortgage, to protect the property against a *bona fide* purchaser; and that a constructive notice, arising from its being recorded as a deed was not sufficient. It is true in that case there was a written defeasance; but it was not executed until six months after the recording of the absolute deed, and long after the conveyance to the adverse party. It therefore could not have altered his rights if the defeasance had continued in parol. If the deed and defeasance had been recorded together as a mortgage the moment the defeasance was executed, it would not have protected the property against the intermediate conveyance. The decree in that cause was afterwards reversed in the Court of Errors, on the ground that the intermediate purchaser had actual notice, but the decision upon the point now under consideration was deemed correct. (15 John. R. 555.) The same question came before this court in *James* v. *Johnson & Morey*, (6 John. Ch. R. 417,) where there was no written defeasance, and was decided in the same way. When that case afterwards came before the Court of Errors, (2 Cowen's R. 247,) the present chief justice examined that question and concurred in the construction of the statute given by Chancellor Kent. And the correctness of that construction was not questioned by any member of the court.

There can be no hardship or injustice in such a construc-

tion; but on the contrary, it will more effectually carry into effect the intention of the legislature, and prevent fraudulent conveyances, and secret trusts. If a conveyance is intended *only as a mortgage, there can be no good reason why the terms on which it is to be defeasible should not appear on its face. If, through inadvertence, it is taken as an absolute deed, the holder may comply with the terms of the statute, by making a written defeasance, specifying the conditions on which it was intended to be given, and recording both together in the book of mortgages. If he does this before the rights of any third party have intervened, he will be protected. And if he neglects it, he will only be in the same situation of every other mortgagee who neglects to have his security recorded.

Having arrived at the conclusion that by the conveyance to Mrs. Healy, she took the property discharged of the mortgage to Spencer, it cannot be necessary to examine the other question raised in this cause. If her conveyance was good against the original mortgagee, it was also good against the *bona fide* assignees of the unregistered mortgage, who took it merely as security for an antecedent debt.

The whole of the surplus moneys must be paid over to Healy and his wife.